UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY MORRIS, # 353577,

       Petitioner,

v.                                                    Case No. 08-cv-11348
                                                  Honorable Lawrence P. Zatkoff

CINDI CURTIN,

       Respondent,
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR
WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A
CERTIFICATE OF APPEALABILITY, AND (3) DENYING AN APPLICATION
FOR LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

**I. INTRODUCTION**

Petitioner Randy Morris, a state inmate currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan,[1] filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. On March 17, 2005, a Macomb County Circuit Court jury convicted Petitioner of (1) kidnapping, MICH. COMP. LAWS § 750.349, (2) conspiracy to kidnap, MICH.

---

[1] Petitioner was incarcerated at the Oaks Correctional Facility in Manistee, Michigan, when he originally filed his habeas petition; however, he has since been transferred to the Chippewa Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is denying the petition in this case, it finds no reason to do so.

COMP. LAWS § 750.349, (3) felonious assault, MICH. COMP. LAWS § 750.82, and (4) felony firearm, MICH. COMP. LAWS § 750.227b(a). On April 28, 2005, he was sentenced to (1) fifteen to forty years in prison for the kidnaping conviction, (2) fifteen to forty years in prison for the conspiracy-to-kidnap conviction, (3) eighteen months to four years in prison for the felonious-assault conviction, and (4) the mandatory two years in prison for the felony-firearm conviction. For the reasons set forth below, the Court will deny the petition. The Court will also decline to issue Petitioner a certificate of appealability and will deny him an application for leave to proceed on appeal *in forma pauperis*.

## II. FACTS

Petitioner's troubles in this case arise because of a kidnapping which occurred on June 17, 2003. Petitioner was charged one month later. He absconded and was picked up one year after the warrant was issued. The prosecution's theory was as follows.

The case involved the kidnapping of the son of a woman who had won millions of dollars in the lottery. Two men broke into her house and used duct tape to abduct her son. The woman's husband was outside the house when the abduction occurred and was chased on foot by the unmasked assailant, while a masked person drove away in the family's vehicle with the boy held captive inside. The Michigan State Police shot the masked assailant and rescued the boy after a chase and crash of the vehicle. Petitioner escaped on foot. As he fled the scene, he threw a roll of duct tape, which was recovered. The duct tape contained his fingerprints. It was the recovery of the duct tape that led to his conviction.

At the preliminary-examination hearing and at trial, the husband identified Petitioner

2

as the unmasked man who had chased him.

Following his convictions and sentencing, Petitioner filed a claim of appeal with the Michigan Court of Appeals, raising the following claims: (1) the trial court erroneously allowed identification testimony that resulted from a suggestive pretrial identification that took place at the preliminary hearing, (2) erroneous admission of testimony that Petitioner provided a false name when he was arrested, (3) erroneous admission of flight evidence, and (4) the prosecutor's misconduct denied Petitioner a fair trial. On October 24, 2006, the Court of Appeals affirmed Petitioner's convictions. *People v. Morris*, No. 262697, 2006 WL 3017922 (Mich.Ct.App. Oct. 24, 2006).

Petitioner subsequently filed an application for leave to appeal the Court of Appeals' decision with the Michigan Supreme Court, raising the same claims. On March 26, 2007, the Michigan Supreme Court denied Petitioner's application, stating "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Morris*, 477 Mich. 1057, 728 N.W.2d 442 (2007).

Petitioner neither filed a post-conviction motion with the state court nor a writ of certiorari with the United States Supreme Court. Rather, he filed this habeas petition, raising the same four claims raised in the state appellate courts and adding an ineffective-assistance-of-trial-counsel claim.

### III. STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Federal courts are therefore bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). This Court must presume the correctness of a state court's factual determinations. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas-corpus

relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law . . . . Under § 2254(d) (1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11.

With that in mind, the Court proceeds to the merits of Petitioner's claims.

## IV. DISCUSSION

### A. Claim I–Suggestive Identification

In his first habeas claim, Petitioner asserts that the trial court erroneously allowed the victim's father to identify him as one of the perpetrators of the crimes. He alleges that his in-court identification was the result of an unduly suggestive identification procedure where the witness was asked to identify him for the first time at the preliminary examination.

The Michigan Court of Appeals, the last court to issue a reasoned decision regarding this claim, stated:

> Here, at trial, James identified defendant as the unmasked man who chased him with a gun, commanded him to lie on the ground and threw a trash can at him on the day that another man, who was with defendant, kidnapped James's son, Kenneth Jones (Jones), and stole April Bonner's (April) Escalade.

5

James specifically stated that he "most definitely" recognized defendant and was "one-hundred percent sure" that defendant was the unmasked man. James further testified that he also identified defendant at the November 12, 2004, preliminary examination. Moreover, James admitted that he never viewed a lineup and did not see defendant from the time of the incident until the preliminary examination, a period of approximately 17 months. Before James's aforementioned testimony, the trial court heard defense counsel's motion to suppress James's in-court identification of defendant. Defense counsel argued that the identification should be suppressed because a lineup was never conducted and the preliminary examination was an unduly suggestive procedure. The trial court denied defendant's motion.

"If a witness is exposed to an impermissibly suggestive pretrial identification procedure, the witness' in-court identification will not be allowed unless the prosecution shows by clear and convincing evidence that the in-court identification will be based on a sufficiently independent basis to purge the taint of the illegal identification." The fairness of an identification procedure is evaluated in light of the total circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification. A preliminary examination identification can be impermissibly suggestive.

Here, the record reflects that approximately 17 months elapsed between the incident and the preliminary examination. However, no evidence was presented that the police told James at or before the preliminary examination that they had the right person in custody. Furthermore, the record reflects that defendant did not have a mask on, defendant chased James for approximately five to ten minutes, James got a good look at defendant's face, and James described defendant to the police as a black man with real dark skin, wearing blue jeans and a hooded sweatshirt. Additionally, the record reflects that James identified defendant at the preliminary examination based on his "face, his lips, the nose, [and] his eyes." Therefore, we conclude that the preliminary examination was not so impermissibly suggestive that it led to a substantial likelihood of misidentification, and thus, the trial court did not err when it denied defendant's motion to suppress James's in-court identification.

*Morris*, 2006 WL 3017922, at 1-2 (citations and footnote omitted).

Pretrial-identification procedures violate due process where the procedures are "unnecessarily suggestive and conducive" such that they risk "irreparable mistaken

identification." *Stovall v. Denno*, 388 U.S. 293, 301-302 (1967). In *Neil v. Biggers*, 409 U.S. 188 (1972), the Supreme Court held that identifications obtained through suggestive means may still be admissible if they are reliable. *Neil*, 409 U.S. at 196-197. In determining whether they are reliable, "the central question" is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.* at 199.

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation.

*Id.* at 199-200. These factors are weighed against the "corrupting effect of the suggestive identification itself." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

In this case, even assuming that the identification at the exam was suggestive, there was no likelihood of misidentification in light of the facts of the case. The witness testified at trial that he was one hundred percent sure that Petitioner was the man who chased him, Petitioner was not wearing a mask, the chase lasted for five to ten minutes, and the witness testified that he got a good look at Petitioner's face. Given that testimony, the state court's adjudication of the claim cannot be said to be objectively unreasonable.

Furthermore, because Petitioner's fingerprints were identified on the roll of duct tape that the unmasked assailant threw into a yard during the chase, there is no real question about Petitioner's identity as the man who chased the witness, and any error in allowing the

7

testimony did not have a substantial impact on the outcome of the trial. *Fry v. Plier*, 551 U.S. 112, 121-22 (2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Against that backdrop, the Court concludes that Petitioner is not entitled to habeas relief regarding his suggestive-identification claim.

### B. Claims II and III–False Name and Evidence of Flight

In his second habeas claim, Petitioner asserts that it was error to allow evidence that he provided the police with a false name when he was arrested. In his third habeas claim, he asserts that it was error to admit into evidence that he was not arrested until twenty-one months after a warrant was issued for him. The evidence showed that the police were unable to locate him during that interval. The Court concludes that neither of those claims presents an issue that is cognizable in this federal-habeas action.

Trial-court error in the admission of evidence does not rise to the level of a federal constitutional claim cognizable in federal-habeas review unless the error renders the trial so fundamentally unfair as to deprive the petitioner of his federal constitutional rights. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). The role of a habeas court is not to pass upon the correctness of the trial court's evidentiary rulings, but rather, it is limited to determining whether the rulings denied the petitioner a constitutionally guaranteed right. *Moore v. Tate*, 882 F.2d 1107, 1109 (6th Cir. 1989). Deference should be accorded to state-court determinations of whether due process was denied by trial error. *Lundy v. Campbell*, 888 F.2d 467, 469-70 (6th Cir. 1989), *cert. denied*, 495 U.S. 950 (1990). Generally, the appraisal of the probative and prejudicial value of

8

evidence is entrusted to the sound discretion of the trial judge and that discretion is not cognizable in a habeas proceeding. *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir. 1978).

Here, the evidence that Petitioner provided a false name upon arrest was probative of his consciousness of guilt and explained, in part, the delay in arrest. Likewise, evidence regarding police efforts to locate Petitioner after a warrant issued for his arrest was probative as to why there had been a delay. The weighing of that probative value against any prejudicial impact was a matter of state evidentiary law and does not present a constitutional issue in this case. The Court therefore concludes that Petitioner is not entitled to habeas relief regarding these claims.

### C. Claim IV–Prosecutorial Misconduct

In his fourth habeas claim, Petitioner alleges that the prosecutor rendered his trial unfair by committing acts of misconduct. There was no objection from defense counsel to the alleged acts of misconduct, and, as a result, when the Court of Appeals addressed the issue, it found that its review was limited to whether "plain error" occurred:

> The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the guilt or innocence of the accused. An attorney may not knowingly offer or attempt to elicit inadmissible evidence, but may argue reasonable inferences from the evidence. A prosecutor need not limit his argument to the blandest possible terms. Moreover, a prosecutor may not appeal to the jury to sympathize with the victim. When reviewing a claim of prosecutorial misconduct, we examine the pertinent portion of the record and evaluate the prosecutor's remarks in context.
>
> Here, during the prosecutor's opening statement, he stated, "[m]any of you are parents. Certainly all of you were children . . . . And in this case we

have a parents' [sic] worst nightmare. Now many of you, if not all of you, while sleeping have a very bad nightmare." The prosecutor went on to explain how a juror would have a bad dream but then wake up and realize that it was just a dream, but in this instance the victims woke up and realized their bad dream was reality. We agree with defendant's contention that the prosecutor's aforementioned comments essentially invited the jurors to put themselves in the victims' shoes. However, the trial court instructed the jury that it "must not let sympathy or prejudice influence [its] decision," it is only to consider properly admitted evidence and that "the lawyers' statements [and] arguments are not evidence." Thus, we conclude that the prosecutor's aforementioned comments did not deny defendant his right to a fair and impartial trial.

Additionally, during the prosecutor's closing argument, he stated, "[w]here's [defendant] during this 11 month period? Have you heard any evidence that he was in a coma . . . Did we hear that he was fighting for our country in Afghanistan or Iraq? . . . Did we hear that he had some important CIA job assignment and it took him on a mission? No, of course not. Did we hear that he's an astronaut, that he's somewhere on a satellite." Here, evidence was provided that a warrant was issued for defendant's arrest in July 2003, and despite numerous efforts by the police to locate defendant after the warrant was issued, defendant was not arrested until he was pulled over for speeding in June 2004. Therefore, we conclude that the prosecutor's aforementioned comments were merely colorful comments on the evidence that had been presented, and thus, were proper. Moreover, the trial court instructed the jury that the prosecutor had the burden to prove every element of the charged crimes beyond a reasonable doubt, defendant did not need to present any evidence or prove anything, defendant had an absolute right not to testify and the jury was not to consider the fact that defendant did not testify. Thus, even if it were found that the prosecutor's aforementioned comments improperly "infringed" on defendant's "right to remain silent by commenting on his failure to come forward with evidence" of his whereabouts, we conclude that the comments did not deny defendant his right to a fair and impartial trial.

Finally, during the prosecutor's closing argument, he stated that defendant gave a false name when he was pulled over for a speeding ticket and argued that defendant must be worried about something else if he gave a false name when he was pulled over for a nonarrestable offense. However, Decker testified that when he pulled defendant over for speeding on June 24, 2004, defendant told him that his name was Michael Daniel Stinson, and Decker stated that he opined that defendant probably told him a different name because he was attempting to cover something up. Therefore, the prosecutor's

> aforementioned closing argument comments merely used the evidence presented to argue a reasonable inference from the evidence. Thus, the prosecutor's comments did not deny defendant his right to a fair and impartial trial. Likewise, we reject defendant's argument that the prosecutor's comments amounted to plain error that affected defendant's substantial rights.

*Morris*, 2006 WL 3017922, at 1-2 (citations omitted).

The Court of Appeals reviewed Petitioner's claim under a plain-error standard of review based on his failure to raise a contemporaneous objection. Michigan's contemporaneous objection rule constitutes an independent and adequate state ground sufficient to bar habeas review. *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). The Sixth Circuit has repeatedly held that plain-error review by a state appellate court constitutes the enforcement of a procedural default. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("[W]e view a state appellate court's review for plain error as the enforcement of a procedural default."); *see also Gulertkin v. Tinnelman-Cooper*, 340 F.3d 415, 422-23 (6th Cir. 2003) (same); *Grayer v. McKee*, 149 F.App'x 435, 441 (6th Cir. 2005). Thus, the Court of Appeals' review of Petitioner's claim on the merits under a plain-error standard does not constitute a waiver of the procedural default. *See Girts v. Yanai*, 501 F. 3d 743, 755 (6th Cir. 2007). The claim may only be reviewed by this Court if Petitioner demonstrates cause and prejudice. *Tinnelman-Cooper*, 340 F.3d at 422-23. The only candidate for cause would be Petitioner's allegation that trial counsel was ineffective for failing to object to the alleged error. Petitioner makes this argument as part of his fifth claim, which is addressed in the next section. *See* section D, *infra*.

However, even if the Court were to consider Petitioner's defaulted prosecutorial-

misconduct claims, the Court would find that they are without merit. In *Macias v. Makowski*, 291 F.3d 447 (6th Cir. 2002), the Sixth Circuit set forth the following approach for assessing prosecutorial-misconduct claims:

> "In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." The relevant question is thus whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."
>
> This court has adopted a two-step approach for determining whether prosecutorial misconduct violates a defendant's due process rights. First, we must consider whether the prosecutor's conduct and remarks were improper. If we conclude that the remarks were improper, then we must apply the four-factor test set forth in *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994), to determine "whether the impropriety was flagrant" and thus violated the defendant's due process rights. The four factors are as follows: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong."

*Macias*, 291 F.3d at 451-52 (some citations omitted).

In this case, as the Court of Appeals noted, any misstatements by the prosecutor were cured by the trial court's jury instructions. It is well established that "[a] jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Thus, any misstatements did not rise to the level of a constitutional violation or so infect the trial with unfairness as to make the resulting convictions a denial of due process.

The Court also concludes that, if there were an error, that error was harmless. The standard for showing harmless error on collateral review, like the standard for demonstrating that a trial error has occurred, is considerably less favorable to the petitioner than the

12

standard applicable on direct review. On direct review, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt," and the state has the burden of proof. *McGhee v. Yukins*, 229 F.3d 506, 513 (6th Cir. 2000) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). The test here differs. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. In fact, the Supreme Court has made it clear:

> "that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* [], whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* []."

*Fry*, 551 U.S. at 121-22.

"[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006), *cert. denied*, 551 U.S. 1134 (2007) (quoting *Donnelly v DeChristoforo*, 416 U.S. 637, 645 (1974)).

Against that backdrop, the Court concludes that the state-court adjudications of Petitioner's prosecutorial-misconduct claims were neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. Petitioner is not entitled to habeas relief on this claim.

13

### D. Claim V–Ineffective Assistance of Counsel

In Petitioner's fifth and final claim, he alleges that his trial counsel was ineffective for failing to object to the alleged misconduct of the prosecutor and for failing to hire an expert witness on the issue of identification testimony. The Court of Appeals limited its review of this issue because Petitioner had not filed a motion for new trial or a motion to remand in order to expand the record and create a factual basis for the claim. It stated:

> Defendant next argues that he was denied his constitutional right to the effective assistance of counsel. We disagree. Defendant failed to properly preserve this issue by raising a motion for a new trial or an evidentiary hearing. When reviewing a claim of ineffective assistance of counsel when an evidentiary hearing is not previously held, our review is limited to the facts contained on the record. As a matter of constitutional law, we review the record de novo.
>
> To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. To show that counsel's performance was below an objective standard of reasonableness, a defendant must overcome the strong presumption that his counsel's actions constituted sound trial strategy under the circumstances. Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which a court will not review with the benefit of hindsight. The failure to present additional evidence constitutes ineffective assistance of counsel only if it deprives the defendant of a substantial defense that would have affected the outcome of the proceedings. Counsel's performance must be measured against an objective standard of reasonableness and without benefit of hindsight. Counsel does not render ineffective assistance by failing to raise futile objections.
>
> As previously discussed, the prosecutor's challenged opening statement and closing argument remarks did not deny defendant his right to a fair and impartial trial, and thus, the prosecutor's remarks did not constitute prosecutorial misconduct. Therefore, any objection by defense counsel to the prosecutor's questioned remarks would have been futile. Accordingly, we

> reject defendant's argument that he was denied his constitutional right to the effective assistance of counsel when defense counsel failed to object to the prosecutor's questioned remarks.
>
> We also reject defendant's argument that he was denied his constitutional right to the effective assistance of counsel when defense counsel failed to present an expert regarding identification or, in the alternative, request an instruction on the grave dangers of misidentification. As discussed, the record reflects that James's identification of defendant was credible. Furthermore, James testified that the man who chased him had a roll of duct tape in his hand, one of the victims' neighbors stated that they saw a black male throw a roll of duct tape over a fence, a roll of duct tape was retrieved from a neighbor's pool cover, the roll of duct tape revealed defendant's fingerprints and Officer Tracy McIntosh testified that she was "a hundred percent certain" that defendant touched the roll of duct tape. Thus, James's identification of defendant was not the only evidence presented that linked defendant to the charged crimes. Therefore, even if defendant could rebut the presumption that defense counsel's failure to present an expert identification witness was sound trial strategy, [], we conclude that presenting an expert identification witness would not have affected the outcome of the proceedings. Similarly, requesting an instruction on misidentification would not have affected the outcome of the proceedings. Accordingly, defendant was not denied his constitutional right to the effective assistance of counsel when defense counsel failed to present an expert on identification or, in the alternative, request an instruction on the dangers of misidentification.

*Morris*, 2006 WL 3017922, at 5-6 (citations omitted).

First, under Michigan law, if a criminal defendant wishes to enlarge the record in support of a claim that his trial counsel was ineffective, he must either file a timely motion for new trial in the trial court within forty-two days of entry of the Judgment of Sentence before filing a claim of appeal (Mich.Ct.R. 6.431(A)(1)), or after having filed a claim of appeal, file a motion for new trial within fifty-six days (Mich.Ct.R. 7.208(B)), or file a timely motion to remand in the Court of Appeals within the time set for filing his appellate brief (Mich.Ct.R. 7.211(C)(1)). In this case, Petitioner failed to seek to expand the record in a

timely way. While Petitioner did ask in the alternative for a remand hearing in the appellate brief itself, that belated request was insufficient under the rules. That failure on Petitioner's part proves fatal to his claim on habeas review.

Second, ineffective assistance of counsel may constitute cause for excusing a procedural default, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Strickland v. Washington*, 466 U.S. 668 (1984). Under established Supreme Court law, a reviewing court must presume that defense counsel's challenged action might be sound trial strategy under the circumstances of the case. *Strickland*, 466 U.S. at 689. To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687; *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

Counsel may decide not to object to prosecutorial remarks for legitimate tactical reasons. "[A] counsel's failure to object to prosecutorial misconduct constitutes defective performance when that failure is due to clear inexperience or lack of knowledge of controlling law, rather than reasonable trial strategy. *Gravley v. Mills*, 87 F.3d 779, 785-86 (6th Cir. 1996). Petitioner's failure to expand the record in this case prevents him from arguing that his counsel was inexperienced or that he did not choose to object to the remarks

16

as a matter of reasonable tactics.

As for the failure to call an expert witness, in order to "present an ineffective assistance of counsel claim based on a failure to call a witness, the petitioner must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result." *Malcolm v. Burt*, 276 F.Supp. 2d 664, 679 (E.D. Mich. 2003). Petitioner has not suggested who the missing expert was or what he would have said. Therefore, there is no basis from which the state appellate court or this Court could conclude that the testimony of the missing witness would have probably altered the outcome of his trial.

Against that backdrop, the Court concludes that Petitioner is not entitled to habeas relief on his ineffective-assistance-of-counsel claim.

### E. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of

reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists would not find its assessment of Petitioner's claims debatable or wrong. The Court therefore declines to issue Petitioner a certificate of appealability and denies him an application for leave to proceed on appeal *in forma pauperis*.

## V.  CONCLUSION

Accordingly, **IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" [dkt. # 1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue Petitioner a certificate of appealability and denies him an application for leave to proceed on appeal *in forma pauperis* because any appeal would be frivolous.  *See* Fed.R.App.P. 24(a).

        S/Lawrence P. Zatkoff
        LAWRENCE P. ZATKOFF
        UNITED STATES DISTRICT JUDGE

Dated:  October 27, 2010

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on October 27, 2010.

        S/Marie E. Verlinde
        Case Manager
        (810) 984-3290